IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 20-cv-03823-PAB

(Bankruptcy No. 16-13817 TBM, Chapter 7)

In re:

FOG CAP RETAIL INVESTORS, LLC

      Debtor.

---

SUMMIT INVESTMENT MANAGEMENT, LLC,
SBN FCCG, LLC, and
SBN EDGE, LLC,

      Appellants,

v.

TOM H. CONNOLLY,

      Appellee.

---

## ORDER

---

      This is an appeal by Summit Investment Management, LLC, SBN FCCG, LLC, and SBN Edge, LLC (collectively, "appellants") from the (1) December 16, 2020 oral ruling [Docket No. 7-6 at 3–80] of the United States Bankruptcy Court for the District of Colorado (the "bankruptcy court") granting the Trustee's Amended Motion Seeking Approval of Claims Subordination Stipulation with Foot Locker Retail, Inc., Authorization to Make an Interim Distribution to Creditors, and Authorization to Settle the Dispute Concerning the $330,000 in Earnest Money Still Held By the Estate and (2) the bankruptcy court's December 17, 2020 Order Approving Stipulations Between Trustee

and Foot Locker Retail, Inc. and Stratford Holdings, LLC [Docket No. 7-1 at 1–3].  The

Court has jurisdiction pursuant to 28 U.S.C. § 158(a).[1]

## I.  BACKGROUND[2]

### A.  The Parties

Fog Cap Retail Investors, LLC ("debtor") was formed in 2002 to hold assets in

the form of leasehold interests for investment purposes.  R. 5 at 10.  SBN FCCG, LLC

("SBN FCCG") acquired ownership of debtor and is the sole member of debtor and a

creditor of debtor.  R. 5 at 10–11.  Summit Investment Management, LLC ("Summit")

and SBN Edge, LLC ("SBN Edge") are other creditors of debtor.  R. 5 at 11.  SBN

FCCG, Summit, and SBN Edge are all related by virtue of SBN FCCG's ownership of

debtor.  R. 5 at 13.

### B.  The Property

Stratford Holding, LLC ("Stratford") is another creditor of debtor.  R. 5 at 11.

Stratford owns certain commercial property near Oklahoma City, Oklahoma (the

"property").  *Id.*  In 1977, Stratford's predecessor entered into a 30-year lease with a

predecessor of Foot Locker Retail, Inc. ("Foot Locker"), which operated a shoe store at

the property from 1977 to 1995.  R. 5 at 14.  In 1995, Foot Locker subleased the

---

[1] After reviewing the parties' submissions, the Court has determined that oral argument is not necessary to the resolution of this appeal.

[2] The Record consists of seven volumes, with volume two separated into two parts.  *See* Docket Nos. 7, 11. The Court refers to the Record by reference to "R. [volume number] at [page of record]."  Accordingly, a citation to page 1 of volume two, part two is written "R. 2b at 1."  The Court draws the following facts, which are undisputed unless otherwise noted, from the findings of fact in the bankruptcy court's December 16, 2020 oral ruling.  *See* Docket No. 7-6 at 10–37; R. 5 at 10–37.

property to a dry cleaning business.  *Id.*

In September 2002, Foot Locker sold and assigned all of its interests under the lease agreement to debtor.  *Id.*  Foot Locker and debtor also entered into an assignment and assumption agreement, and debtor "stepped into all of the obligations under the lease agreement with Stratford."  R. 5 at 14–15.  The dry cleaning business operated until August 2008, when debtor forcibly evicted the tenant.  R. 5 at 15.  The property sat vacant for almost four years.  R. 5 at 55.  In February 2012, debtor surrendered its leasehold interest in the property back to Stratford, and the lease agreement between the two was terminated.  R. 5 at 15.  At that time, however, it was determined that the property was contaminated with hazardous dry-cleaning chemicals, including perchloroethylene ("PCE").  R. 5 at 16.  In November 2012, the State of Oklahoma commenced an environmental enforcement action against Stratford and its former dry-cleaning tenants.  *Id.*[3]

To recover its costs and damages, including the cost of the environmental

_____

[3] There is disagreement between the parties and their experts on what caused the PCE contamination and when.  R. 5 at 56.  Either the PCE was released periodically or continuously by dry-cleaning operations from 1995 to 2008 or there was a "catastrophic release" when the property was vacant between 2008 and 2012.  *Id.* The Trustee contends that the exact mechanism and timing are not important in determining debtor's potential liability.  *Id.*  The bankruptcy court agreed, but stressed that it had considered expert testimony on the issue as well as transcripts of depositions taken of the dry-cleaning tenants.  *Id.*  In canvassing the issues, the bankruptcy court found the catastrophic release possibility "very logical," given the testimony of the dry-cleaning tenants and experts.  R. 5 at 62.  Regardless, however, the bankruptcy court found that "there is a very high probability that [debtor] is liable under the various provisions of the lease agreement, [sale agreement between Foot Locker and debtor], and assumption agreement."  R. 5 at 64.  Moreover, the Trustee testified that he was not aware of any reasonable argument against debtor's liability, and respondents' counsel failed to identify any evidence negating debtor's liability.  R. 5 at 64–65.

remediation, Stratford sued Foot Locker and debtor in the United States District Court for the Western District of Oklahoma, asserting claims for nuisance, trespass, negligence, and other claims, as well as claims under the Resource Conservation and Recovery Act ("RCRA") and the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA").  R. 5 at 16–17.  The parties and the bankruptcy court refer to this litigation as the "Oklahoma Litigation."  Stratford also asserted claims for breach of the lease agreement against debtor and Foot Locker.  R. 5 at 17.  Summit and SBN FCCG are defendants in the Oklahoma Litigation.  *Id.*

   Stratford asserts that debtor is liable to it for between $12,726,324 and $20,726,324 for the damage to the property.  R. 5 at 11.  Foot Locker has a general unsecured claim against debtor for $21,668,943, asserting indemnification for environmental damages pertaining to the property.  R. 5 at 12.  Summit and SBN FCCG have filed proofs of claim of an unknown amount for indemnification for the property's environmental damage.  *Id.*

### C.  The Bankruptcy Cases

As a result of the Oklahoma Litigation, debtor filed for bankruptcy in the United States Bankruptcy Court for the District of Colorado, which triggered an automatic stay of all pending litigation, including the Oklahoma Litigation, pursuant to 11 U.S.C. § 362.  R. 5 at 19.  Debtor indicated that it would liquidate all of its assets, consisting primarily of leasehold interests, yet doing so was "extremely difficult and contentious" because debtor "lined up on one side along with other affiliated and related entities" against the parties in the Oklahoma Litigation, including Stratford and Foot Locker, as well as the unsecured creditors' committee.  R. 5 at 19–20.  The creditors filed motions for relief

from the stay so that the Oklahoma Litigation could continue and requested that the bankruptcy court abstain from deciding objections to proofs of claim by Stratford and Foot Locker in favor of their resolution in the Oklahoma Litigation.  R. 5 at 20–21.

On January 12, 2017, the bankruptcy court granted motions for relief from the stay, permitting the parties to the Oklahoma Litigation to continue to litigate their claims against debtor in the Oklahoma court.  R. 5 at 21.  The bankruptcy court entered these orders on the assumption that the Oklahoma Litigation would progress to trial in 2017 or 2018.  *Id.*  The bankruptcy court then converted the Chapter 11 case into a liquidation under Chapter 7 and appointed Tom H. Connolly as Trustee.  *Id.*

The Trustee has focused on resolving the various claims stemming from the Oklahoma Litigation through mediation and settlement discussions and has hired local counsel and an environmental consulting expert witness.  R. 5 at 22.

Though less relevant to the Oklahoma Litigation, the Trustee has also attempted to resolve a dispute concerning an asset purchase agreement with Stratford for the purchase of certain of debtor's leasehold interests prior to the conversion of the bankruptcy from Chapter 11 to Chapter 7.  R. 5 at 23–24.  Stratford tendered $330,000 as a deposit in connection with the transaction, which the bankruptcy court approved. R. 5 at 24.  However, Stratford terminated the agreement, and debtor initiated an adversary proceeding against Stratford in the United States Bankruptcy Court for the District of Colorado (the "adversary proceeding").  *Id.*  Debtor seeks declaratory judgment determining that debtor, not Stratford, was entitled to retain the $330,000 deposit.  *Id.*  The adversary proceeding has been held in abeyance pending resolution of the Oklahoma Litigation.  R. 5 at 24–25.

### D.  The Settlement Motions

On September 28, 2020, the Trustee filed a motion seeking approval of (1) a claim subordination stipulation with Summit and SBN FCCG (the "Summit Stipulation"), settling Summit's and SBN FCCG's claims at $0.00 each and (2) a stipulation with Foot Locker (the "Foot Locker Stipulation").  R. 5 at 25.  Summit and SBN FCCG objected to the Foot Locker Stipulation.  R. 5 at 26.  On November 12, 2020, the Trustee filed a stipulation with Stratford (the "Stratford Stipulation").  R. 5 at 8.

As to the Summit Stipulation, Summit and SBN FCCG agreed to the treatment of their proofs of claim in the debtor's bankruptcy case and stipulated that their claims were contingent, unliquidated claims for reimbursement and contribution.  R. 5 at 26.  They also agreed to the estimation of their respective claims at $0.00 solely for purposes of the bankruptcy case.  *Id.*  The Summit Stipulation indicated that Summit and SBN FCCG could seek reconsideration of the estimation under 11 U.S.C. § 502(j) after the conclusion of the Oklahoma Litigation.  *Id.*  In addition, the Summit Stipulation included the agreement of Summit and SBN FCCG to allow the Trustee to refund the $330,000 deposit held by the Trustee to Stratford, provided that Stratford dismisses its counterclaims against Summit and SBN FCCG in the adversary proceeding.  R. 5 at 27.  The Summit Stipulation stated that the Trustee intended to make an interim distribution to creditors with allowed claims.  *Id.*  However, Summit and SBN FCCG did not expressly agree to such proposed interim distribution, but agreed that, if an interim distribution is made to Stratford, such amount shall be credited against any damages asserted by Stratford in the case in Oklahoma.  *Id.*  Finally, the Summit Stipulation

contained a number of "prophylactic" protections in relation to the impact of the stipulation in the case in Oklahoma, in particular that the stipulation shall have no collateral estoppel or *res judicata* effect on the determinations of liability or damages in the Oklahoma Litigation.  R. 5 at 27–28.

As to the Foot Locker Stipulation,[4] debtor proposed that Foot Locker's $21,668,943 claim against debtor be subordinated to all allowed claims and all costs of administration, except the Summit and SBN FCCG claims, estimated at $0.00 for purposes of the bankruptcy case.  R. 5 at 28–29.  The bankruptcy court noted that, "[w]hether characterized as subordinated or estimated at zero, the practical result is exactly the same" because "the Foot Locker, Summit, and SBN FCCG claims will not receive a distribution by the Trustee."  R. 5 at 30.  Foot Locker also agreed to the Trustee allowing the Stratford claim of $6,500,000.  *Id.*  The Trustee agreed to withdraw and dismiss with prejudice the complaint in the adversary proceeding and to disperse the $330,000 deposit to Stratford, and Stratford agreed to dismiss all counterclaims filed in the adversary proceeding.  R. 5 at 30–31.  The Trustee also proposed to make interim distributions to four creditors before December 31, 2020.  R. 5 at 31–32.  If the Trustee was able to do so by that date, the Trustee would also seek a tax carry-back refund from the Internal Revenue Service ("IRS") based on the interim distributions, which would entitle the estate to a refund of $800,000 to be used as a future additional

_____

[4]  The bankruptcy court initially did not approve the Foot Locker Stipulation and, instead, provided the Trustee an opportunity to submit an amendment to be sent out on notice to all creditors.  R. 5 at 28.

distribution to creditors.  R. 5 at 33.[5]

As to the Stratford Stipulation, Stratford agreed to a reduced claim, down from an initial general, unsecured claim in the amount of $20,726,324 to $6,500,000 for purposes of distribution.  R. 5 at 28–29.  The original Stratford claim was for past and future costs for the environmental contamination, while the $6,500,000 claim is for past costs only.  The bankruptcy court noted that the stipulation effectively means that Stratford's future costs are disallowed for purposes of distribution.  R. 5 at 29.  The bankruptcy court also noted that, as a practical matter, this means that the entire Stratford claim for past and future costs is resolved by the allowance of the $6,500,000 claim.  *Id.*

The settlement motion states that all parties to the Oklahoma Litigation may continue to pursue their claims and defenses in that litigation with certain minor exceptions.  R. 5 at 34.  First, the Trustee will stipulate to entry of judgment in favor of Foot Locker and against debtor on liability under the sale and assumption agreements, but will not stipulate to any damages or costs.  *Id.*  Second, the proposed interim distribution made to Stratford will be credited against any damages that might ultimately be awarded by the court in the Oklahoma Litigation, which would reduce the potential liability of Foot Locker, Summit, and SBN FCCG to Stratford.  *Id.*  Finally, the bankruptcy court noted that the settlement motion, the Stratford Stipulation, and the Foot Locker Stipulation – like the Summit Stipulation – contain "extensive prophylactic

---

[5] On January 18, 2022, the Trustee advised the Court that he received a check for $827,137.15 from the United States Department of the Treasury as a "tax refund for costs paid by the estate in 2020."  Docket No. 23.

language barring an adverse use in the Oklahoma Litigation."  R. 5 at 72–73.

### E.  The Bankruptcy Court's Ruling

After reviewing the facts and evidence, considering the Trustee's business judgment, and weighing the factors that a bankruptcy court considers in determining the appropriateness of a settlement agreement, the bankruptcy court concluded that the portion of the settlement agreement dealing with resolution of Stratford's $6,500,000 claim, as well as Foot Locker's subordinated claim, were fair and equitable and in the best interest of the estate.  R. 5 at 74.  The bankruptcy court noted that the portion of the adversary proceeding before the court returning $330,000 to Stratford to dismiss the complaint and counterclaims was "really uncontested."  *Id.*  The court reasoned that, even if the Trustee prevails in the adversary proceeding and recovers the entire $330,000 for the estate, most of that money would be returned to Stratford as part of the Chapter 7 distributions, which makes pursuit of the adversary proceeding "almost pointless," especially given the substantial legal fees incurred in continuing the adversary action.   R. 5 at 75–76.

As for the interim distribution, the bankruptcy court noted that the stipulations contemplate a distribution to creditors and that any distribution on the Stratford claim would be credited against any damages awarded in favor of Stratford and against Foot Locker in the Oklahoma Litigation.  R. 5 at 76–77.  The bankruptcy court concluded that the Trustee proved that the interim distributions provided two benefits : (1) enabling the parties to avoid incurring additional costs by settling with Stratford and Foot Locker and (2) refunding $800,000 to the estate if the distributions were made before December 31, 2020.  R. 5 at 77.  Ultimately, the bankruptcy court found that the Trustee had made

9

a strong case for interim distributions, while respondents had not presented an argument against distribution, especially given the stipulated estimation of their claims at $0.00 for purposes of distribution.  R. 5 at 78.

### F.  Appellants' Arguments

Appellants raise seven arguments on appeal: (1) the bankruptcy court erred in exercising jurisdiction over the claims after it previously lifted the automatic stay to allow claim liquidation to occur in the Oklahoma Litigation; (2) the bankruptcy court erred in exercising jurisdiction over certain claims falling under CERCLA and RCRA, as well as other non-core claims, after entering its stay order and allowing the Oklahoma Litigation to resolve these matters; (3) the bankruptcy court erred in approving the stipulations because the appellants' individual claims and defenses should have been heard and fully adjudicated on the merits without those rights being abridged or modified in a settlement agreement; (4) the bankruptcy court erred in approving the stipulation with Stratford because the stipulation was not set for an evidentiary hearing and the motion was not properly noticed and served on creditors; (5) the bankruptcy court erred in allowing the Trustee to make an interim distribution on contingent, unliquidated, and disputed claims pending in the Oklahoma Litigation; (6) the bankruptcy court erred in allowing the Trustee to "confess judgment" in favor of Foot Locker in the Oklahoma Litigation "notwithstanding that the Foot Locker claim is a contingent reimbursement or contribution claim under CERCLA and therefore should have been disallowed by the Trustee"; and (7) the bankruptcy court erred in approving the settlement agreement with Foot Locker and Stratford because the settlements were not fair and equitable to appellants, whose rights were prejudiced in the Oklahoma Litigation.  Docket No. 14 at

3–4.

## II.  STANDARD OF REVIEW

A party may appeal the "final judgments, orders, and decrees" of a bankruptcy court to either the district court or a bankruptcy appellate panel.  28 U.S.C. §§ 158(a), (c)(1).  A district court reviews the bankruptcy court's legal conclusions de novo, its factual findings for clear error, and its discretionary decisions for abuse of discretion.  *In re Baldwin*, 593 F.3d 1155, 1159 (10th Cir. 2010); *Busch v. Busch (In re Busch)*, 294 B.R. 137, 140 (B.A.P. 10th Cir. 2003) (lifting of automatic stay); *Brasher v. Turner (In re Turner)*, 266 B.R. 491, 494 (B.A.P. 10th Cir. 2001) (excluding an exhibit)*; Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 771 (10th Cir. 1997) (entering default judgment).

The parties dispute the standard by which the Court must review certain of the bankruptcy court's rulings.  While appellants agree that legal determinations are reviewed *de novo* and factual determinations are reviewed for clear error, appellants argue that the question of whether the bankruptcy court erred in exercising jurisdiction is a legal question reviewed *de novo*.  Docket No. 14 at 10–11.[6]  The Trustee, however, contends that the Court should review the bankruptcy court's determination for an abuse of discretion, which is the standard for approving a settlement.  Docket No. 17 at 5.  The Court will address these arguments in the sections below.

---

[6] The Court cites to the page numbers as they are assigned by the case management/ electronic case files ("CM/ECF") system.

11

### III.  ANALYSIS

#### A.  Whether the Bankruptcy Court Erred in Exercising Jurisdiction after Lifting the Stay

Appellants' first argument is that, although it was "logical" for the bankruptcy court to issue its January 12, 2017 order lifting the stay and allowing claims to proceed in the Oklahoma Litigation, the bankruptcy court erred in subsequently vacating that order and exercising jurisdiction through approving the settlement agreements.  Docket No. 14 at 24.  Appellants argue that the bankruptcy court erred in effectively resolving a portion of the Oklahoma Litigation after permitting the Oklahoma court to do so.  *Id.* at 25.  Appellants argue that this was error because, when the bankruptcy court lifted the stay to allow the Oklahoma Litigation to proceed, the bankruptcy court relinquished its jurisdiction and, even if it technically maintained jurisdiction, it diminished the estate's interest in the property over which the court granted the relief.  *Id.* at 26–27. Additionally, appellants argue that the bankruptcy court's ruling is "problematic" given that the stay was imposed to prevent the parties from incurring duplicative expenses in both bankruptcy court and the Oklahoma Litigation.  *Id.* at 27.

The Trustee argues that the bankruptcy court had jurisdiction over the settlement motion because it "related to" the bankruptcy case and resolution in Oklahoma would not be possible, as there are creditors in the bankruptcy action that are not parties in the Oklahoma Litigation.  Docket No. 17 at 18–19.  The Trustee also argues that, contrary to appellants' argument, a bankruptcy court does not lose jurisdiction by lifting the automatic stay.  *Id.* at 19.  Finally, the Trustee argues that the plain language of the order and stipulations, which provide that the bankruptcy claims would be allowed in the

amount determined in the Oklahoma Litigation, meaning that the Oklahoma Litigation will continue and the injunctive relief test is inapplicable.  *Id.* at 20–21.

As an initial matter, the parties dispute the standard of review.  Appellants argue that the bankruptcy court's exercise of jurisdiction is a legal question reviewed *de novo*, Docket No. 14 at 10, while the Trustee argues that the bankruptcy court's decision to exercise its jurisdiction was discretionary and should be reviewed for an abuse of discretion.  Docket No. 17 at 5.  Because the Court would affirm the bankruptcy court's ruling on *de novo* review, the Court necessarily finds that there was no abuse of discretion.  "The jurisdiction of the bankruptcy courts, like that of other federal courts, is grounded in, and limited by, statute."  *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995).  Title 28 U.S.C. § 1334(b) provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."  In addition, "[t]he district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate."  28 U.S.C. § 1334(e)(1).  District courts may, in turn, refer "any or all proceedings arising under title 11 or arising in or related to a case under title 11 . . . to the bankruptcy judges for the district."  28 U.S.C. § 157(a).

"Once a bankruptcy proceeding begins in one court, the concurrent jurisdiction of other courts is partially stripped."  *Scenic Tours Pty Ltd v. Haimark, Ltd.*, No. 16-cv-01276-NYW, 2017 WL 1684138, at *4 (D. Colo. May 3, 2017) (citing *Chao v. Hosp. Staffing Servs., Inc.*, 270 F.3d 374, 383 (6th Cir. 2001)); *see also In re United States*

*Brass Corp.*, 110 F.3d 1261, 1268 (7th Cir. 1997).  However, "the exclusivity of the bankruptcy court's jurisdiction reaches only as far as the automatic stay provisions of 11 U.S.C. § 362."  *Scenic Tours*, 2017 WL 1684138, at *4 (quoting *Chao*, 270 F.3d at 393).  If the automatic stay applies to an action directed at the debtor or its property, jurisdiction is exclusive in the bankruptcy court.  If the automatic stay does not apply – for example, if an exception to the stay covers the action in question – the bankruptcy court's jurisdiction is concurrent with that of any other court of competent jurisdiction.  And if the bankruptcy court grants relief from the stay with respect to certain property or claims, *see* 11 U.S.C. § 362(d), (e), (f), the bankruptcy court retains jurisdiction over those matters, although its jurisdiction is concurrent with that of other courts of competent jurisdiction.  *Chao*, 270 F.3d at 383 (citing *In re Ridgemont Apartment Assocs.*, 105 B.R. 738 (Bankr. N.D. Ga. 1989) (lifting stay with respect to certain property in the bankruptcy court's exclusive jurisdiction and thereby allowing state court actions relating to the property to proceed and stating, "[n]otwithstanding relief from the stay, the bankruptcy court's jurisdiction of the property continues, but is subject to being changed")); *see also In re Carlomagno Shipping, S.A.*, 185 B.R. 25, 27 (E.D. La. 1995); *In re Hohenberg*, 143 B.R. 480 (Bankr. W.D. Tenn. 1992); *Morgan Guar. Trust Co. v. Hellenic Lines*, 38 B.R. 987 (S.D.N.Y. 1984).  Thus, the Court finds that the bankruptcy court did not relinquish its jurisdiction when it lifted the stay.

The cases that appellants rely upon do not indicate otherwise.  For example, appellants rely on *In re Canaveral Port Auth. v. M/V Liquid Vegas*, 2009 WL 10712614, at *2 (M.D. Fla. Nov. 6, 2009), and *Carlomagno*, 185 B.R. at 27–28, for the proposition

that the bankruptcy court forfeits its jurisdiction over the property of the estate when it grants relief from the automatic stay.  First, both of those cases stressed the unique jurisdictional issue of a bankruptcy court sitting in admiralty, which is not present here. *See Canaveral*, 2009 WL 10712614, at *2 ("Where stay relief has been granted and a court of admiralty has assumed jurisdiction of the *res*, courts have held that the bankruptcy court has relinquished its jurisdiction over the property." (citing 1 Howard J. Steinberg, *Bankruptcy Litig.* § 1:19)); *Carlomagno*, 185 B.R. at 28 (finding "continuing bankruptcy jurisdiction [] inconsistent with the admiralty court's administration of the vessel, its sale, and the distribution of those proceeds to the maritime lienholders"). Second, in both *Canaveral* and *Carlomagno* cases, the courts explained that the court relinquished jurisdiction after the property in question was already sold.  In *Canaveral*, the court stated that the debtor, who owned the vessel being foreclosed, moved the district court to relinquish jurisdiction back to the bankruptcy court after the vessel had been sold in order to use the proceeds to pay creditors.  *Canaveral*, 2009 WL 10712614, at *2.  The court held that the seizing and selling of the vessel meant that the district court, not the bankruptcy court, had jurisdiction to administer the property. *Id.* at *3.  Similarly, in *Carlomagno*, the court explained that the vessel was seized by order of the district court and sold.  185 B.R. at 26.  The court continued, "[a]t this time, the admiralty [district] court has retained jurisdiction over the proceeds."  *Id.* Carlomagno's argument that, "despite the exercise of jurisdiction by th[e district court sitting in admiralty], the Bankruptcy Court retain[ed] jurisdiction over the property" failed because "the subsequent action by the admiralty court, seizing and selling the vessel, []

vest[ed] the district court with exclusive jurisdiction." *Id.* at 26–27.[7]

Appellants also rely on *Loken-Flack, LLC v. Stoner*, No. 13-cv-00915-PAB-CBS, 2014 WL 3562792, at *7 (D. Colo. July 17, 2014).  In that case, however, this Court explained that "a bankruptcy court's jurisdiction over the debtor's property 'is considered to be continuing until some action is taken which would necessitate the relinquishment of jurisdiction.'" *Id.* (quoting *In re Cordry*, 149 B.R. 970, 974 (D. Kan. 1993)).  *Loken-Flack*, *Canaveral*, and *Carlomagno* do not provide support for appellants' argument because there was no subsequent action in the Oklahoma court that removed jurisdiction from the bankruptcy court.  *Loken-Flack* is of even less support to appellants because the Court explained its rule by citing *In re Fricker*, 113 B.R. 856, 864 (Bankr. E.D. Pa. 1990), which held, "we do not believe that granting relief from the stay deprives a bankruptcy court of jurisdiction over that property."

The Court also finds that the bankruptcy court had jurisdiction over the settlements because they "related to" the bankruptcy case.  A bankruptcy court has jurisdiction over related proceedings, which are "civil proceedings that, in the absence of a bankruptcy petition, could have been brought in a district court or state court."  *In re Gardner*, 913 F.2d 1515, 1517–18 (10th Cir. 1990) (citing 28 U.S.C. §§ 157, 1471(b)). "[T]he test for determining whether a civil proceeding is related in bankruptcy is whether

---

[7] Similarly, in *In re Hood*, 92 B.R. 648, 655 (Bankr. E.D. Va. 1988), while the court stated that, "[a]fter the bankruptcy court has entered an order granting relief from the automatic stay, the subject property is generally considered to be removed from the estate even though it may technically and temporarily remain property of the estate," the court was discussing a debtor who sought to overturn a foreclosure.  The court noted that "there must be a point of finality in a foreclosure of a security interest," *id.* at 656, supporting the Trustee's argument that the property was not removed from the bankruptcy court's jurisdiction solely by virtue of the court lifting the stay.

the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Id.* at 1518 (citing *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)). The Court finds that the settlement motions and stipulations could "conceivably have an[] effect on the estate being administered in bankruptcy" and therefore were related to the bankruptcy action, which gave the bankruptcy court jurisdiction. *See id.* Moreover, the stipulations' "prophylactic" language limits any prejudice to appellants' claims in the Oklahoma Litigation.

Finally, appellants argue that the bankruptcy court effectively re-imposed the stay in order to bring the claims back into the bankruptcy court, but doing so required the court to follow the test for injunctive relief, which the court did not do. Docket No. 14 at 28. This is incorrect. The Foot Locker Stipulation, for instance, provides that the bankruptcy claim would be allowed in the amount subsequently determined in the Oklahoma Litigation, meaning that the Oklahoma Litigation was expressly permitted to continue. The bankruptcy court also noted that the Summit Stipulation contained prophylactic language limiting the impact or effect of the Summit Stipulation in the Oklahoma Litigation. *See, e.g.*, R. 5 at 27–28 (quoting the Summit Stipulation as stating: "This stipulation was made without prejudice to any claims or defenses asserted by Summit in the Oklahoma litigation or otherwise against any party . . . . [and] shall have no collateral estoppel or *res judicata* effect on the determinations of liability or damages in the Oklahoma [L]itigation."). Such language would have been unnecessary had the Oklahoma Litigation been stayed. Because the Court finds that the bankruptcy court did not re-impose the stay, the Court need not consider under what circumstances it could have done so. Nor does the Court find convincing appellants' argument that the

bankruptcy court's ruling is "problematic" given that the stay was imposed to prevent duplicative expenses, Docket No. 14 at 27, given the slow pace of the Oklahoma Litigation.  The Court will affirm the bankruptcy court's exercise of jurisdiction after lifting the stay.[8]

### B.  Whether the Bankruptcy Court Erred in Exercising Jurisdiction over Non-Core Claims

Appellants' second argument is that, in approving the settlement motion and stipulations, the bankruptcy court assessed debtor's and potentially other parties' CERCLA liability.  Docket No. 14 at 29.  This was in error, appellants argue, because the bankruptcy court "did not have subject matter jurisdiction [over] the claims and counterclaims related to CERCLA and non-core claims," should have declined to exercise jurisdiction, and did not follow the process that a bankruptcy court must follow in reviewing a global settlement under CERCLA.  *Id.* at 32–33.  Additionally, appellants argue that courts considering Chapter 11 confirmation plans have stated that bankruptcy courts do not have jurisdiction to analyze CERCLA settlements.  *Id.* at 32.

Core proceedings are defined as "proceedings which have no existence outside of bankruptcy" and are proceedings in which bankruptcy courts may enter final judgments.  *In re Johnson*, 575 F.3d 1079,1082 (10th Cir. 2009).  As explained above, the bankruptcy courts also have jurisdiction over related proceedings, which are "civil proceedings that, in the absence of a bankruptcy petition, could have been brought in a

---

[8] Appellants have recently directed the Court to *In re Thompson*, 231 B.R. 802 (D. Colo. 1999) as "supplemental authority" under Federal Rule of Bankruptcy Procedure 8014(f).  Docket No. 24.  That case, however, is distinguishable because it was "based on a theory of permissive abstention," *see Thompson*, 231 B.R. at 806 n.3, which is not at issue here.

district court or state court." *Gardner*, 913 F.2d at 1517–18.  Actions that do not depend on the bankruptcy laws for their existence and which could proceed in another court are not core proceedings.  *Id.* (citing *In re Wood*, 825 F.2d 90, 96 (5th Cir. 1987)). In non-core proceedings, the bankruptcy court must submit proposed findings of fact and conclusions of law to the district court unless the parties otherwise agree.  28 U.S.C. § 158(c).

The Trustee maintains that the bankruptcy court did not resolve any CERCLA claims directly or indirectly.  Docket No. 17 at 21.  The Trustee argues that the Foot Locker Stipulation states that Foot Locker's claim would be allowed in the amount determined in the Oklahoma Litigation, but subordinated to all other claims except those of Summit and SBN FCCG.  *Id.*; *see also* R. 5 at 29–30.  The Trustee also argues that the Foot Locker Stipulation states that the claim is based upon "contractual indemnity and liability under the Portfolio Sale Agreement . . .  and the Assignment and Assumption Agreement and Bill of Sale."  *Id.* at 21–22 (citing Appellants' App. 1137–39).  Similarly, the Trustee maintains that the Stratford Stipulation, detailing Stratford's $6,500,000 claim for its past lost, is a claim under the lease that contains prophylactic language and has no impact on the CERCLA claims in the Oklahoma Litigation.  *Id.* at 22 (citing Appellants' App. at 1158–1133, 1134–36).

The Court agrees with the Trustee.  The Foot Locker and Stratford Stipulations make clear that those two creditors' claims have nothing to do with any party's liability under CERCLA, which is to be determined in the Oklahoma Litigation.  The amended stipulation states, as to Foot Locker, that the claim is "based upon assertions, *inter alia*,

of entitlement to contractual and common law indemnification and contribution" and that the agreement is in exchange for Foot Locker agreeing to subordinate its claim.  *See* R. 1 at 130.  The Foot Locker Stipulation also states that debtor agreed to "entry of judgment as to liability in favor of Foot Locker in the Oklahoma Litigation on Foot Locker's claims of contractual indemnity and liability under the Portfolio Sale Agreement . . . and the Assignment and Assumption Agreement and Bill of Sale."  R. 1 at 131.  As to the Stratford claim, the stipulation states that the $6,500,000 is for "alleged costs already incurred," *see* R. 1 at 130, and there is noting in the oral ruling that would indicate that the Stratford Claim is based on CERCLA liability.  Rather, it concerns the tenants' and assignees' liability under the lease.  The Court also agrees that the disclaimer language that appears in the stipulations indicates that neither the parties to the stipulations nor the bankruptcy court intended to resolve any claims, under CERCLA or otherwise, that were raised in the Oklahoma Litigation.

The record and transcript of the oral ruling make clear that the bankruptcy court's consideration of the experts' testimony and reports regarding the cause of the contamination was not to decide CERCLA claims, but rather was for the purpose of determining whether the Trustee exercised sound business judgment in negotiating the settlement and distributions.  *See, e.g.*, R. 5 at 38–41 (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) ("There can be no informed or independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself of all facts necessary for an intelligent an objective opinion of the probabilities of ultimate success should the claim be litigated."); and quoting *In re Rich Global*, LLC, 652 F.

20

App'x. 625, 631 (10th Cir. 2016) (unpublished) ("In evaluating a proposed settlement the bankruptcy court is not required to conduct a mini trial . . . or decide numerous questions of law and fact, but it must canvas the issues to determine whether the settlement falls below the lowest point in the range of reasonableness.")).

Because the bankruptcy court did not decide any CERCLA claims, the Court does not reach appellants' additional arguments that the bankruptcy court lacked subject matter jurisdiction over the CERCLA claims, that the court should have declined to exercise jurisdiction, or, if it did not, that the court was required to follow a particular analytical framework in evaluating a CERCLA settlement. *See* Docket No. 14 at 32–33. Further, the Court notes that appellants are incorrect in asserting that "the liquidation of *all* the parties' respective claims had previously been transferred" for resolution in the Oklahoma Litigation. *Id.* at 35. As stated previously, the January 12, 2017 order granting relief from the stay did not "transfer" the parties' claims such that the bankruptcy court lost jurisdiction. *See* R. 2b at 186–87; *see Chao*, 270 F.3d at 393.

### C.  Whether the Bankruptcy Court Erred in Approving the Stipulations through a Settlement Agreement

Appellants' third argument is that the January 12, 2017 order lifting the stay recognized that the parties' contract and CERCLA claims had to be resolved in the Oklahoma Litigation. Docket No. 14 at 36. However, when the pace of the Oklahoma Litigation did not suit the parties' time frame, they moved resolution to the bankruptcy court. *Id.* at 37. This was in error, appellants argue, because, when a party files objections to a claim, its rights to be heard on the objection are not to be "abridged or modified by a settlement motion." *Id.* (quoting *In re CS Mining, LLC*, 574 B.R. 259, 281

21

(Bankr. D. Utah 2017)).  Appellants stress that a trustee "may not use his settlement power to abridge the *individual rights* of a non-settling creditor or other party in interest" because the trustee's "settlement power allows him to compromise the claim by and against the estate, but not the claims and obligations that exist between nondebtor parties."  *Id.* at 38 (quoting *In re DVR, LLC*, 582 B.R. 507, 513 (Bankr. D. Colo. 2018), *aff'd*, 606 B.R. 80, 86 (D. Colo. 2019)) (emphasis appellants').  Appellants cite the existence of the Oklahoma Litigation as an indication of the parties' objections and cite to Stratford's and Foot Locker's alter ego and veil piercing claims against SBN and Summit.  *Id.*  Appellants contend that these claims were abridged by allowing the Trustee to confess to debtor's liability through the settlement because, notwithstanding the prophylactic language in the order and stipulations, evidence of the settlement and stipulations have been introduced in the Oklahoma Litigation.  *Id.* at 38–39.

The Trustee responds that appellants' arguments under *CS Mining* about a trustee's ability to settle objections is misplaced because that case dealt with a party's objection, while appellants are creditors, not parties.  Docket No. 17 at 24.  The Trustee also argues that appellants' reliance on *DVR* is also misplaced because, in that case, the court contrasted objections involving the objecting creditor's individual rights, such as a dispute over competing lien rights, from objections "that only disputes a creditor's entitlement to a distribution from an estate or its assets."  *Id.* (quoting *DVR*, 606 B.R. at 85).  The Trustee notes that appellants did not file objections to Stratford's or Foot Locker's claims in the bankruptcy case but, even if they had, they have not identified any individual rights as in *DVR*.

While appellants cite *CS Mining* for the proposition that, "[w]hen a party files an objection to a claim, their [sic] rights to be heard on the claim objection should not be abridged or modified by a settlement," *see* Docket No. 14 at 37 (quoting *CS Mining*, 574 B.R. at 281), the Court is not persuaded by the Trustee's argument that *CS Mining*'s use of "a party" means that the case should be disregarded.  In *DVR*, the bankruptcy court explained that, while the bankruptcy code does not define the phrase "party in interest," Congress intended that the phrase be "elastic and broad designed to give the Court great latitude."  *DVR*, 582 B.R. at 518–19 (quoting *In re Pub. Serv. Co.*, 88 B.R. 546, 550, 51 (Bankr. D.N.H. 1988)).  The Tenth Circuit has explained, albeit in a different context, that "party in interest" means "all persons whose pecuniary interests are directly affected by the bankruptcy proceedings."  *Id.* at 519 (quoting *In re Alpex Comp. Corp.*, 71 F.3d 353, 356 (10th Cir. 1995)).  Appellants, like other creditors, could have some pecuniary interest in the bankruptcy proceedings, even though they agreed to settle their claims for $0.00.

Nevertheless, the Court agrees with the distinction drawn by the Trustee and the court in *DVR* that, "[w]hen a claim objection involves the individual rights of the objecting creditor, such as a dispute over competing lien rights, it is intrinsically different from a claim objection that only disputes a creditor's entitlement to a distribution from an estate or its assets."  *DVR*, 606 B.R. at 85.  Here, appellants' objection, as best the Court can discern from the transcript of the oral hearing and the Record, is that the Trustee did not explain the basis for his calculation of $6,500,000 in past expenses to Stratford, R. 1 at 164; that allowing the Stratford claim of $6,500,000 is premature in

light of the Oklahoma Litigation and is not fair and equitable to appellants, R. 1 at 171;

that the Trustee has attempted to short-circuit the Oklahoma Litigation, R. 1 at 164; and

that the Trustee seeks to make a distribution to Stratford based solely on Stratford's

alleged damages without any factual determination of debtor's or Foot Locker's liability.

*Id.* This objection does not involve appellant's individual rights, such as a dispute over

competing lien rights would; rather, it is a dispute over Stratford's entitlement to the

distribution. Thus, the Court finds that the bankruptcy court properly exercised

jurisdiction in approving the settlements under *DVR*.[9] The Court also notes that

appellants did not object to the Summit Stipulation and thereby agreed to settle

Summit's and SBN FCCG's claims at $0.00, that such claims were contingent,

unliquidated claims for reimbursement and contribution, and that the Trustee was

allowed to refund the $330,000 deposit to Stratford. R. 5 at 24–27.

Appellants argue that the Trustee, Stratford, and Foot Locker should be

estopped from taking positions contrary to their initial position that resolution in

Oklahoma is proper. Docket No. 14 at 39–40. The Trustee responds that appellants'

judicial estoppel argument is waived because it was not raised in the bankruptcy court.

Docket No. 17 at 26. The Trustee additionally contends that, if the Court considers the

argument, there is no inconsistency because relief from a stay is not the same as the

bankruptcy court approving a settlement of certain claims. Docket No. 17 at 26. The

Court agrees with the Trustee. Appellants did not argue judicial estoppel in the

proceeding before the bankruptcy court, and the only mention of estoppel in the record

---

[9] This is a separate question from whether the bankruptcy court erred in finding
the settlements fair and reasonable.

is the prophylactic language included in the agreements.  The Court therefore declines to consider this argument, raised for the first time on appeal.  *See Lyons v. Jefferson Bank & Tr.*, 994 F.2d 716, 722 (10th Cir. 1993) (noting that the court will not consider arguments raised for the first time on appeal, even if the argument is simply a change to a new theory but falls under the same general category as an argument presented at trial).

### D.  Whether the Bankruptcy Court Erred in Approving the Stipulations Without a Separate Evidentiary Hearing

Appellants' fourth argument is that the bankruptcy court erred in approving the Stratford Stipulation because the stipulation was accepted without an evidentiary hearing or proper notice and service on creditors as required by Federal Rules of Bankruptcy 9019 and 2002.  Docket No. 14 at 40.  Appellants argue that, unlike the original settlement motion or amended settlement motion, for which the Trustee provided noticed, the Stratford Stipulation was filed without notice, and the bankruptcy court did not identify the Stratford Stipulation in either the November 3, 2020 non-evidentiary hearing or the order setting the November 16, 2020 order setting the evidentiary hearing.  *Id.* at 41–42.  Appellants objected on this ground at the December 16, 2020 hearing.  *Id.*

In response, the Trustee concedes that it took a week to finalize the Stratford Stipulation after filing the amended settlement motion, but contends that appellants had notice of the proposed settlement with Stratford, objected to the settlement, and presented evidence at the evidentiary hearing.  Docket No. 17 at 26–27.  Additionally, the Trustee argues that the amended settlement motion, which appellants received by

mail and their counsel received through CM/ECF, specifically identified the Stratford Stipulation.  *Id.* at 26.  Thus, the Trustee contends, there were no due process issues. *Id.* at 27–28.

Federal Rule of Bankruptcy Procedure 2002(a)(3) provides for 21-day notice to creditors (among others) in connection with a hearing on approval of a settlement. There appears to be no dispute that, unlike the original or amended settlement motion, the Stratford Stipulation was not accompanied with a notice.  A comparison of the filings in the Record confirms this.  The Trustee's motion seeking approval of the Foot Locker and Summit Stipulations, filed on September 28, 2020, provided a notice of the motion with an objection deadline of October 19, 2020.  *See* R. 1 at 65–87.  The Trustee's amended motion seeking approval of the Foot Locker Stipulation and authorization to make an interim distribution to creditors and to settle the dispute over the $330,000 was filed on November 5, 2020 and included a notice of the motion with an objection deadline of November 13, 2020.  *See* R. 1 at 118–38.  The Stratford Stipulation, filed on November 12, 2020, contained no such notice.  *See* R. 1 at 142–53.

However, this fact is not dispositive of appellants' due process argument because Rule 2002(a)(3) allows the bankruptcy court to forego notice altogether "for cause shown," and Rule 9006(c)(1) provides that "the bankruptcy court for cause shown may in its discretion with or without notice order the period reduced."  *See Advantage Healthplan, Inc. v. Potter*, 391 B.R. 521, 550–51 (D.D.C. 2008), *aff'd sub nom. Greater Se. Cmty. Hosp. Found., Inc. v. Potter*, 586 F.3d 1 (D.C. Cir. 2009); *see also In re Thompson*, 965 F.2d 1136, 1140–41 n.5 (1st Cir. 1992) (bankruptcy court may waive

notice requirement for cause).  This Court may find that the bankruptcy court had good cause to shorten the notice period even where the bankruptcy court does not expressly make a finding of good cause.  *In re Kong*, 2016 WL 3267588, at *7 (B.A.P. 9th Cir. June 6, 2016); *Advantage*, 391 B.R. at 551 (citing *In re Triple E Transport, Inc.*, 169 B.R. 368, 373 (E.D. La. 1994)); *see also In re Patel*, 43 B.R. 500, 503 (N.D. Ill. 1984).

The Record makes clear that appellants had actual notice of the Stratford Stipulation and did not suffer a due process violation because "[n]otice is adequate when[,] although a party did not receive formal notice, actual notice was received."  *In re Azbill*, 385 B.R. 799, 2008 WL 647407, * 6 (B.A.P. 6th Cir. 2008) (citing *Creditors Comm. of Park Nursing Ctr., Inc. v. Samuels*, 766 F.2d 261, 263 (6th Cir. 1985)).  "A bankruptcy procedural rule requiring notice is adequately complied with if a party not receiving formal notice receives actual notice and has an adequate opportunity to raise his objections."  *In re Glinz*, 66 B.R. 88, 91 (D.N.D. 1986); *see also Azbill*, 2008 WL 647407.  Here, appellants do not contest that they received at least two forms of notice, via mail to appellants and via the bankruptcy court's CM/ECF system to appellants' counsel.  Further, appellants' objection, filed after appellants' counsel received electronic notification of the stipulation, discusses appellants' concerns with the $6,500,000 Stratford claim.  R. 1 at 163–79.  "A creditor's due process rights are not violated where the creditor has suffered no prejudice," *In re Gen. Dev't Corp.*, 165 B.R. 685, 688 (S.D. Fla. 1994), and appellants' filing of a timely objection after the Stratford Stipulation was docketed establishes that appellants did not suffer prejudice by virtue of the notice they received.  *See In re Robotic Vision Sys., Inc.*, 378 B.R. 417 (B.A.P. 1st

Cir. 2007) ("The inclusion of the entire Amended Settlement Agreement to the motion for approval, the fact that Costa opposed the motion, and the fact that a contested hearing was held to consider whether or not the Amended Settlement Agreement should be approved, clearly satisfy the constitutional due process requirements."); *see also Glinz*, 66 B.R. at 91 (finding no due process violation where "[t]here is no showing that the attorney could have made any arguments with 20 days notice by mail that he could not have made with the actual notice he received at the hearing."). The Court finds that this satisfies the due process requirements of notice and that the bankruptcy court did not err in approving the stipulations without a specific notice filed and a separate hearing.

### E.  Whether the Bankruptcy Court Erred in Allowing the Trustee to Make an Interim Distribution

Appellants' fifth argument is that the bankruptcy court erred in approving the interim distributions. Docket No. 14 at 44–45. As an initial matter, the Court notes that the interim distributions were part of the Foot Locker and Summit Stipulations, *see* R. 1 at 78, the amended Foot Locker Stipulation and authorization request, *see* R. 1 at 131, and the Stratford Stipulation. *See* R. 1 at 144. The Court also notes that settlements are favored in bankruptcy, see *In re S. Med. Arts Cos., Inc.*, 343 B.R. 250, 255 (B.A.P. 10th Cir. 2006), and reviewed under an abuse of discretion standard to determine whether the bankruptcy court approved of the settlement "upon an objective evaluation of developed facts." *See Reiss v. Hagmann*, 881 F.2d 890, 891–92 (10th Cir. 1989) (citation omitted).[10] "An abuse of discretion occurs when the trial court's decision is

_____

[10] Appellants agree with this standard of review. Docket No. 14 at 11.

arbitrary, capricious[,] or whimsical or results in a manifestly unreasonable judgment." *In re Lang*, 305 B.R. 905, 908 (B.A.P. 10th Cir. 2004) (internal quotations omitted). "[T]he question is not how the reviewing court would have ruled, but rather whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion." *Id.*

Appellants have three main concerns.  First, appellants argue that the court noted that its approval of an interim distribution is guided by two considerations, the benefit to the estate and ensuring that there is no violation of the priority scheme in place, yet the bankruptcy court "conflated 'benefit to the estate' with the approval of the Amended Settlement Motion and not the benefit to the estate of the actual interim distribution."  Docket No. 14 at 45.  Second, appellants argue, the court erred in concluding that the $800,000 tax refund was uncontested when it was actually "contingent upon a future event."  *Id.* at 46.  Third, appellants argue that the "benefit to the estate" consideration "cannot trump the requirements of the Bankruptcy Code[,] which provide that a trustee may only distribute on 'allowed' claims," which these were not because they could only be resolved in the Oklahoma Litigation.  *Id.*

The Trustee notes that the interim distribution, including the anticipated $800,000 tax refund, were part of the agreements with Summit and SBN FCCG and that Summit and SBN FCCG agreed to the interim distribution in part because it would "operate to reduce [appellants'] potential liability to Stratford."  Docket No. 17 at 28–29 (quoting R. 5 at 71).  The Trustee also disputes that the anticipated tax refund was "contingent" and not a "straightforward . . . benefit to the estate."  *Id.* at 29.  To appellants' argument that the distributions violated the bankruptcy code because Foot

Locker's and Stratford's claims were not "allowed," the Trustee argues that the Foot Locker Stipulation expressly provided that its claim would be allowed in the amount determined in the Oklahoma Litigation and would be subordinated in the bankruptcy case and Stratford's claim was expressly allowed in the amount of $6,500,000. *Id.* at 29–30.

The Court finds that appellants have not established that the bankruptcy court abused its discretion in approving the interim distributions. While appellants argue in reply that they only agreed that the Trustee would attempt to seek authority to make an interim distribution, not that Trustee could actually make such a distribution, *see* Docket No. 20 at 13, the Court finds that, in light of the fact that appellants failed to object to the Summit Stipulation, which included discussion of the interim distributions, appellants' argument is unconvincing.

The Court also finds that the bankruptcy court did not abuse its discretion in approving the interim distributions after considering the facts of the case and relevant case law. Although the bankruptcy court recognized that interim distributions are unusual in Chapter 7 bankruptcies, which usually result in no distributions at all, the court considered the "general disbursement scheme" in 11 U.S.C. § 726(a) and relevant case law. *See* R. 5 at 43–44. In particular, the court considered *In re Bird*, 565 B.R. 382 (Bankr. S.D. Tex. 2017), involving a Chapter 7 trustee's request to make an interim distribution in order to maximize distributions to creditors. R. 5 at 44. The court in *Bird* recognized that, although distribution typically occurs after the court approves the trustee's final report and accounting, the bankruptcy code does not bar interim distributions and, "when it benefits the estate to do so, the Court is authorized to

30

approve any interim distribution using its authority pursuant to [11 U.S.C.] § 105(a)."

*Bird*, 565 B.R. at 400.[11]  While the bankruptcy court in this case noted that it is generally

"reticent to rely on Section 105(a)," the court found the holding of *Bird* to be correct.  R.

5 at 45.  The court also recognized that, while § 105(a) may never be used contravene

other sections of the bankruptcy code, there is no section of the code that bars interim

distributions.  *Id.*  The Court finds no error in this conclusion or in the bankruptcy court's

conclusion that an interim distribution would benefit the estate because, by settling with

Stratford and Foot Locker, the "Trustee will avoid incurring additional expenses and

costs in connection with the Oklahoma Litigation" and because of the carryback tax

refund benefit that would be possible if the distribution was made before December 31,

2020.  R. 5 at 77.  The bankruptcy court recognized that these were "clear economic

benefit[s]."  *Id.*  The Court also does not find compelling appellants' argument that the

refund was "contingent" simply because the refund was not guaranteed, as appellants

do not identify any contingencies that may have prevented the refund.

Additionally, the Trustee's proposed interim distributions do not provide for any

claim to Foot Locker, *see* R. 1 at 134, because the Foot Locker Stipulation does not

provide for damages, so there can be no error as to Foot Locker.  As to Stratford, the

---

[11]  Section 105(a) discusses the bankruptcy court's equitable powers and provides that

> [t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.  No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

claim was allowed in the Stratford Stipulation, and the distribution was noted in the exhibit, along with the distribution to SBN Edge. *Id.* Thus, the argument that the bankruptcy court erred in authorizing the Stratford distribution because the claim was not "allowed" is not persuasive. The Court does not find the bankruptcy court's authorization of the distribution to be "arbitrary, capricious or whimsical" or that it "results in a manifestly unreasonable judgment." *See Lang*, 305 B.R. at 908.

### F.  Whether the Bankruptcy Court Erred in Allowing the Trustee to Confess Judgment in Favor of Foot Locker

Appellants' sixth argument is that the bankruptcy court erred in allowing Foot Locker's claim. Docket No. 14 at 47–50. Appellants cite to 11 U.S.C. § 502(e)(1)(B). *Id.* That section states that "the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor, to the extent that . . . such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution." 11 U.S.C. § 502(e)(1)(B). Appellants argue that § 502(e)(1)(B) bars Foot Locker's claim because the claim is a contingent and unliquidated claim based on entitlement to indemnification and contribution from debtor, as the Trustee decided to allow judgment against the estate and in favor of Foot Locker in an amount to be decided in the Oklahoma Litigation. Docket No. 14 at 48–49.[12]

In response, the Trustee argues that appellants misunderstand the facts and the

---

[12] Appellants also argue that contribution claims "falling under CERCLA . . . are claims in which Section 502(e)(1)(B) appl[ies]." *Id.* at 48. The Court does not consider this argument because the Court has already determined that the bankruptcy court did not resolve any CERCLA claims.

law because the bankruptcy court has not "allowed" the claim, but rather ordered that Foot Locker's claim shall be allowed in the amount to be determined in the Oklahoma Litigation.  Docket No. 17 at 31.  Because the Oklahoma Litigation is ongoing and there has been no determination of the amount of Foot Locker's damages, the Trustee argues that its claim is not presently allowed.  *Id.*  The bankruptcy code permits this, the Trustee contends, under 11 U.S.C. § 502(e)(2), which states that "[a] claim for reimbursement or contribution of such an entity that becomes fixed after the commencement of the case shall be determined, and shall be allowed . . . the same as if such claim had become fixed before the date of the filing of the petition."  The Trustee argues that Foot Locker's claim will become fixed in the Oklahoma Litigation.

The Court agrees with Trustee and will affirm the bankruptcy court's decision to accept the stipulation for judgment in the Oklahoma Litigation on Foot Locker's liability.  Under 11 U.S.C. § 502(e)(1)(B) and § 502(e)(2), a claim for reimbursement can be deferred until it is no longer contingent; then it can be allowed as a pre-petition claim.  *In re Pettibone Corp.*, 162 B.R. 791, 809 (Bankr. N.D. Ill. 1994).  Section 502(e) operates by disallowing the claim until such time, if ever, as an entity is found liable and judgment is entered.  *Id.* at 809.  At that time, pursuant to § 502(e)(2), the reimbursement claims should be deemed effective as of a pre-petition date.  *Id.* (citing 11 U.S.C. § 502(e)(1)(B) and § 502(e)(2)); *see also In re Gianasmidis*, 318 F. Supp. 3d 442, 451 (D. Mass. 2018) ("In other words, although [the debtor] objected to the [creditors'] claim of proof and the claim was therefore not 'determined' at the time of the petition, the claim, once determined, is not to be treated any differently than it would be

33

were it determined at the time the petition was filed."); *In re Archdiocese of Saint Paul & Minneapolis*, 579 B.R. 188, 197 (Bankr. D. Minn. 2017) ("section 502(e) also provides that a claim for reimbursement or contribution that becomes fixed after the commencement of the case shall be determined, and shall be allowed or disallowed the same as if such claim had become fixed before the date of the filing of the petition"); *In re Insley*, 313 B.R. 667, 670 (Bankr. W.D. Pa. 2004) (describing § 502(e)(2) as a "relation back mechanism"); *In re Durango Georgia Paper Co.*, 297 B.R. 326, 329 (Bankr. S.D. Ga. 2003) (explaining that, under § 502(e)(2), the amounts of certain claims "are each to be determined post-petition but are to be treated 'the same as if such claim had become fixed before the date of the filing of the petition,' and then allowed or disallowed" (quoting § 502(e)(2) (emphasis added)).  Thus, contrary to appellants' argument, Foot Locker's claim is not presently "allowed," but, as the Foot Locker Stipulation states, the claim shall be allowed after the Oklahoma court determines damages, at which time it will no longer be contingent.

Appellants also contend that the bankruptcy court's treatment of the Foot Locker claim has caused them prejudice because, notwithstanding the prophylactic language, the stipulations have been filed in the Oklahoma Litigation, and the Oklahoma court entered judgment against debtor based on the stipulations.  Docket No. 14 at 49–50. However, appellants do not provide any concrete example of such harm.  Moreover, if appellants do not believe that the bankruptcy court's disclaimers are being followed in the Oklahoma Litigation, the proper forum to address that concern is not on appeal before this Court but rather in the Oklahoma Litigation itself.

## G.  Whether the Bankruptcy Court Erred in Approving the Settlement

Appellants' seventh and final argument is that the bankruptcy court erred in approving the settlement agreement and stipulations with Stratford and Foot Locker because they were not fair and equitable.  Docket No. 14 at 50.  As noted earlier, settlements are favored in bankruptcy, *see S. Med. Arts Cos.*, 343 B.R. at 255, and are reviewed for an abuse of discretion to ensure that the bankruptcy court's decision to approve the settlement was based on an objective evaluation of the developed facts. *Reiss*, 881 F.2d at 892.  "[W]ithout conducting a trial or deciding the numerous questions of law and fact," the bankruptcy court is to "review the issues and determine whether the settlement falls below the lowest point in the range of reasonableness." *Rich Global*, 652 F. App'x. at 631.  This requires a determination of "whether the settlement is fair and equitable and in the best interests of the estate."  *In re Kaiser Steel Corp.*, 105 B.R. 971, 976–77 (D. Colo. 1989) (citations omitted).

A bankruptcy court is to consider the following factors in determining whether a proposed settlement is fair and equitable: (1) the probable success of the underlying litigation on the merits; (2) possible problems in collecting a judgment; (3) the expense and complexity of the litigation; and (4) the interests of creditors in deference to their reasonable views.  *See In re Kopexa Realty Venture Co.*, 213 B.R. 1020 (B.A.P. 10th Cir. 1997); *Liberty Bank, F.S.B. v. D.J. Christie, Inc.*, 681 F. App'x. 664, 668 (10th Cir. 2017) (unpublished); *S. Med. Arts*, 343 B.R. at 256; *In re Dennett*, 449 B.R. 139, 145 (D. Utah 2011); *In re W. Pac. Airlines, Inc.*, 219 B.R. 575, 579 (D. Colo. 1998).  In addition, the trustee's business judgment is to be given "great judicial deference."  *In re*

*Psychrometric Sys., Inc.*, 367 B.R. 670, 674 (Bankr. D. Colo. 2007).

Appellants do not argue that the bankruptcy court failed to weigh any of these factors individually.  Instead, appellants argue that the settlements were not fair and equitable because the bankruptcy court looked only to the fairness of the settlement as between the debtor and the settling claimant, without considering the rights of third parties.  Docket No. 14 at 51 (citing *In re Arter & Hadden, LLP*, 373 B.R. 31, 36 (Bankr. N.D. Ohio 2007) (citing *In re AWECO, Inc.*, 757 F.2d 293, 298 (5th Cir. 1994)); *In re Masters Mates & Pilots Pension Plan*, 957 F.2d 1020, 1031 (2d Cir. 1992)).[13]  In addition, appellants argue that the rights of SBN FCCG and Summit were abridged or impacted by the settlement due to entry of judgment against debtor, which could impact the alter ego and veil piercing claims currently being litigated in Oklahoma.  *Id.* at 52.

The Trustee responds that the cases that appellants rely upon either are not dispositive of the settlements' fairness or actually support the bankruptcy court's ruling rather than appellants' arguments.  Docket No. 17 at 33.  The Trustee also argues that the bankruptcy court did not fail to evaluate third-party rights, but rather included prophylactic language in the settlement agreements that stated appellants' alter ego arguments in the Oklahoma Litigation are not affected by the bankruptcy court's order. *Id.* at 36.

---

[13] Appellants also argue that the settlements were not fair and equitable because the bankruptcy court transferred subject matter jurisdiction to the Oklahoma court, which was in the process of ruling on the issues in the settlement and because the bankruptcy court permitted the Trustee, on behalf of debtor, to "confess[] to some amount of CERCLA related liability." *Id.* at 51–52.  The Court previously addressed these arguments and found that the bankruptcy court did not relinquish jurisdiction when it lifted the stay and that Trustee did not confess to any amount of CERCLA liability. *See* Parts III.A, III.B.

The Court agrees with the Trustee and finds no abuse of discretion in the bankruptcy court's ruling on the settlement agreements.  The Court also agrees with the Trustee that the cases cited by appellants do not counsel reversal.  Regardless of whether *Arter & Hadden* and *Masters Mates* are irrelevant to this case because they concern injunctions or violations of the bankruptcy code's rules on priority, as the Trustee argues, or whether the cases are applicable for the rule that the bankruptcy court cannot "ignor[e] third-party rights," *see Arter & Hadden*, 373 B.R. at 36 (quoting *AWECO*, 725 F.2d at 298, and citing *Masters Mates*, 957 F.2d at 1031), appellants have not shown that the bankruptcy court in fact ignored or abridged appellants' rights, as the alter ego and veil piercing claims that appellants mention will be resolved in the Oklahoma Litigation and the bankruptcy court approved of the prophylactic language in the agreements.  Appellants have not shown that the bankruptcy court's approving the settlement agreements was "arbitrary, capricious or whimsical" resulted "in a manifestly unreasonable judgment."  *See Lang*, 305 B.R. at 908.  The Court will thus affirm the bankruptcy court's ruling.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the oral ruling [Docket No. 7-6 at 3–80] granting the Trustee's Amended Motion Seeking Approval of Claims Subordination Stipulation with Foot Locker Retail, Inc., Authorization to Make an Interim Distribution to Creditors, and Authorization to Settle the Dispute Concerning the $330,000 in Earnest Money Still Held By the Estate is **AFFIRMED**.  It is further

**ORDERED** that the Order Approving Stipulations Between Trustee and Foot

Locker Retail, Inc. and Stratford Holdings, LLC [Docket No. 7-1 at 1–3] is **AFFIRMED**.

DATED August 17, 2022.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

38